Joseph R. Manning, Jr., Esq. (State Bar No. 223381)
**MANNING LAW, APC**
20062 S.W. Birch St., Suite 200
Newport Beach, CA 92660
Office: (949) 200-8755
DisabilityRights@manninglawoffice.com

Attorneys for Plaintiff
ROSEMARY GARCIA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSEMARY GARCIA, an individual,<br><br>Plaintiff,<br>v.<br><br>MAMMOTH HOSPITALITY MANAGEMENT, LLC, a Delaware limited liability company; and DOES 1-50 inclusive,<br><br>Defendants**.** | Case No.: 2:19-cv-00668-WBS-EFB<br><br>**OBJECTION TO ALLEGED EVIDENCE IN SUPPORT OF DEFENDANT'S OPPOSITION TO MOTION FOR REMAND**<br><br>[Concurrently filed with Plaintiff's Reply] |

# EVIDENTIARY OBJECTION

Plaintiff submits the following Objections to Defendant Mammoth Hospitality Management, LLC's ("Defendant") Opposition to Motion for Remand:

**OBJECTION NO. 1**

> "Plaintiff Rosemary Garcia's ("Plaintiff") counsel specializes in filing lawsuits alleging that businesses allegedly do not comply with the Americans with Disabilities Act ("ADA") and/or California's Unruh Act ("Unruh Act")." Opposition at p. 2.

Grounds for Objection: Lack of foundation and hearsay (FRE 602 and 802); relevance, speculation, and argument (FRE 402, 602, 802 and 1002); any probative value is substantially outweighed by the risks of unfair prejudice, confusion of the issues, or waste of time (FRE 403); and lacks authentication (FRE 901); "Serial litigation is not, by itself, inherently wrong." *Johnson v. Roque*, No. 1:13-cv-1628-AWI-SMS, 2013 WL 6574073, at *3 (E.D. Cal. Dec. 13, 2013), adopted in full, 2014 WL 791521, at *1 (E.D. Cal. Feb. 25, 2014); *De La Rosa v. Lewis Foods of 42nd Street, LLC*, 124 F. Supp. 3d 290, 293 n.5 (S.D.N.Y. 2015) (stating that the fact that the ADA plaintiff is a "frequent filer" who is a plaintiff in dozens of cases "does not affect the Court's analysis"); *Adams v. SHRI Dwarkesh Investments, LLC*, No. 6:15-cv-03261-MDH, 2015 WL 6755321, at *3 (W.D. Mo. Nov. 4, 2015) ("Federal appellate case law makes clear, however, that 'tester' status does not deprive a plaintiff of standing under Title III of the ADA."); *Colorado Cross Disability Coalition v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211 (10th Cir. 2014) ("anyone who has suffered an invasion of the legal interest protected by Title III may have standing, regardless of his or her motivation in encountering the invasion"); id. at 1216 ("a plaintiff's status as tester is irrelevant in determining whether she has suffered an injury in fact under Title III of the ADA."); *Castle v. Eurofresh, Inc.*, 731 F.3d 901, 912 (9th Cir. 2013) ("[T]he mere fact of

discrimination offends the dignitary interest that the statute[ is] designed to protect, regardless of whether the discrimination worked any direct economic harm to the plaintiffs.") (Berzon, J., concurring); *Houston v. Marod Supermarkets, Inc*., 733 F.3d 1323, 1330–40 (11th Cir. 2013) (finding the plaintiff's tester motive behind his visit to supermarket did not foreclose standing for his claim under Title III of the ADA); *id*. at 1332 ("The substantive right conferred by [the ADA] statute is to be free from disability discrimination in the enjoyment of the facility, regardless of [plaintiff's] motive for visiting the facility."); *id*. ("Nothing in that statutory language precludes standing for tester plaintiffs; if anything, 'no individual' and 'any person' are broad terms that necessarily encompass testers."); *Morales v. Ralphs Grocery Co*., No. 1:12-cv-00742-AWI-SKO, 2012 WL 6087699, at *8 (E.D. Cal. Dec. 6, 2012) ("the Ninth Circuit has indicated that district courts should not necessarily condemn serial ADA litigation"); *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724 (7th Cir. 2011) ("it's not unlawful to be a professional . . . plaintiff") (Posner, J.); *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 534 (C.D. Cal. 2011) ("The Court is troubled that Defendants have devoted valuable pages in their Opposition to an apparent smear campaign that paints Plaintiff as a 'serial plaintiff' because she is litigating two class actions. As Plaintiff prudently notes, this Court has already held that being a serial plaintiff is not a basis for finding that a plaintiff is atypical."); *Gordon v. Virtumundo, Inc*., 575 F.3d 1040, 1056 (9th Cir. 2009) ("[T]he term 'professional,' as in 'professional plaintiff,' is not a 'dirty word,' see *Murray v. GMAC Mortgage Corp*., 434 F.3d 948, 954 (7th Cir. 2006), and should not itself undermine one's ability to seek redress for injuries suffered . . . ."); id. at 1069 ("we accord standing to individuals who sue defendants that fail to provide access to the disabled in public accommodation as required by the Americans with Disabilities Act ("ADA"), even if we suspect that such plaintiffs are hunting for violations just to file lawsuits.") (Gould, J., concurring); *Molski v. Evergreen Dynasty Corp*., 521 F.3d 1215, 1220 (9th Cir.

2008) ("while self-interest surely drives serial access litigation in part, the reason there can be so many lawsuits about access to public accommodations is that there are so many violations of the laws that seek to assure access.") (Berzon, J., dissenting from denial of rehearing en banc) (emphasis in original); *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir. 2008) ("For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA.") (quoting *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1062 (9th Cir. 2007)); *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1062 (9th Cir. 2007) ("For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA."); *Holloway v. Full Spectrum Lending*, Case No. CV 06-5975 DOC (RNBx), 2007 WL 7698843, at *8 (C.D. Cal. June 26, 2007) (citing *Murray*) ("Next, [defendant] argues that [plaintiff] is a "professional plaintiff" who is closely tied to her lawyers. The Court agrees with the Seventh Circuit that nothing in the [federal statute at issue] precludes a plaintiff from suing multiple parties that have violated her rights.") (emphasis added); *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 733 (9th Cir. 2007) ("One need not be a client or customer of a public accommodation to feel the sting of its discrimination.") ("Title III's broad general rule contains no express 'clients or customers' limitation . . . .") (quoting *PGA Tour v. Martin*, 532 U.S. 661, 679 (2001)); *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) ("testers" "usually are praised rather than vilified"); *Smith v. Pacific Properties and Development Corp.*, 358 F.3d 1097, 1102 (9th Cir. 2004) ("[t]esters have played a long and important role in fair housing enforcement"); *Tandy v. City of Wichita*, 380 F.3d 1277, 1287 (10th Cir. 2004) (finding that "testers" had standing to sue for relief under Title II of the ADA); *Shaver v. Independent Stave Co.*, 350 F.3d 716, 724 (8th

Cir. 2003) ("The district court seems to have added an additional requirement, namely, that the party asserting the claim did not purposefully seek the adverse action. Nothing in the words of the statute or in our cases, however, suggests that the conduct of the aggrieved party, other than the party's initial protected activity, is relevant."); *id*. at 724-25 ("The Courts . . . have advanced two different reasons for allowing such [tester] suits to proceed. [¶] First, the mere fact of discrimination offends the dignitary interest that the statutes are designed to protect, regardless of whether the discrimination worked any direct economic harm to the plaintiffs. . . . Congress was trying to protect a dignitary interest with the ADA. Second, tester cases have been allowed to proceed on a 'private attorney general' theory. By giving litigants an incentive to attack illegal activity . . . , Congress enlisted private selfinterest in the enforcement of public policy.") (internal citation omitted); *Kyles v. J.K. Guardian Sec. Servs*., 222 F.3d 289, 298-99 (7th Cir. 2000) (holding that employment "testers" have standing to sue under Title VII of the Civil Rights Act of 1964); "Such is the nature of 'private-attorney-general' provisions: Congress perceives a wrong but finds it too costly to enforce the law it passes to address that wrong." *Native American Arts, Inc. v. Peter Stone Co., U.S.A., Inc*., 222 F. Supp. 3d 643, 647 (N.D. Ill. 2016), appeal docketed, No. 16-4278 (7th Cir. Dec. 30, 2016). "[W]ith damages far outstripping the actual loss, it is not surprising that suits like this are filed; private-attorney-general statutes are meant to encourage this." *Id*. "The fact that statutes . . . give rise to 'cottage industries' can't be laid at the feet of attorneys who take advantage of them." *Id*. "The statute is what it is, and judges must implement its rule whether or not they think it wise . . . ." *Blue Cross Blue Shield of Massachusetts, Inc. v. BCS Ins. Co.*, 671 F.3d 635, 638 (7th Cir. 2011).

**RULING**

Granted _____ Denied _____

4

PLAINTIFF'S EVIDENTIARY OBJECTION

DATED: September 16, 2019        Respectfully submitted,
                                 MANNING LAW APC

                                 By:  */s/ Joseph R. Manning, Jr.*
                                      Joseph R. Manning, Jr.